FRANCES GRANTHAM, Plaintiff-Appellant v. R. G. BARRY CORPORATION, Employer; TRANSPORTATION INSURANCE CO., Carrier, Appellees

No. 9310IC520

(Filed 21 June 1994)

1. **Workers' Compensation § 231 (NCI4th)— occupational disease—respiratory irritants—failure to show incapability of earning same wages at other employment**

The Industrial Commission did not err by concluding that plaintiff failed to prove disability as a result of her occupational disease after 13 June 1989 and that she was not entitled to temporary total disability benefits after that date where plaintiff developed an allergic reaction to chemicals used in the employer's plant and was awarded temporary total disability benefits for an occupational disease from 4 May 1989 through 5 June 1989; plaintiff thereafter returned to work at the same wage until 13 June 1989; plaintiff showed that she was unable to return to the same employment or any other employment that would expose her to chemical or other respiratory irritants; the only limitation

GRANTHAM v. R. B. BARRY CORP.

[115 N.C. App. 293 (1994)]

on plaintiff's ability to work is that she must avoid respiratory irritants; and plaintiff failed to show that she was incapable of earning the same wages she had earned before her injury in any other employment after 13 June 1989.

**Am Jur 2d, Workers' Compensation §§ 395-399.**

2. **Workers' Compensation § 472 (NCI4th)— amount of expert witness fee—no abuse of discretion**

The Industrial Commission did not abuse its discretion by awarding plaintiff's medical expert a witness fee of $350 and by denying plaintiff's motion to increase this fee to $3,197.60 where the witness spent only three hours testifying at a deposition and reviewing the file in preparation for the deposition; the witness charges $120 per hour; and other charges billed to plaintiff by the witness were for expert toxicological support for her claim. N.C.G.S. § 97-80(a).

**Am Jur 2d, Workers' Compensation § 723.**

Appeal by plaintiff from order entered 19 April 1993 in the North Carolina Industrial Commission by Chairman James J. Booker. Heard in the Court of Appeals 28 February 1994.

Prior to this action, Plaintiff Frances Grantham was employed by Defendant R. G. Barry Corporation ("Defendant Corporation") for approximately twenty years in various positions involved in manufacturing bedroom slippers. In 1990, plaintiff filed a "Notice of Accident" and claim against R. G. Barry Corporation in the North Carolina Industrial Commission alleging that on 12 June 1989 she "contracted an occupational disease . . . caused by exposure to chemicals in the work place and aggravation of an asthmatic condition . . ." Thereafter, plaintiff filed a request for a hearing on her claim.

Following a hearing, on 29 July 1991, Deputy Commissioner Tamara R. Nance entered an opinion and award concluding that "[a]s a result of her occupational disease, plaintiff was temporarily and totally disabled from 4 May 1989 to 5 June 1989" but that "[p]laintiff does not retain any permanent disability as a result of her occupational disease." Based on these findings and on findings as to plaintiff's average weekly wage, the deputy commissioner ordered Defendant Corporation to pay plaintiff "temporary total disability benefits at the rate of $166.67 per week for the period from 4 May 1989 through 5 June 1989." Further, the deputy commissioner

ordered Defendant Corporation to pay medical expenses incurred by plaintiff for treatment of her occupational disease and an expert witness fee of $250 to Dr. Lewis, $350 to Dr. Schiller, and $500 to Dr. Yount.

On 2 August 1991, plaintiff filed a motion to modify the deputy commissioner's award regarding Dr. Schiller's expert witness fee by increasing the award from $350 to $3,197.60, which motion Deputy Commissioner Nance denied on 15 August 1991. Thereafter, plaintiff appealed the order of 29 July 1991 to the Full Commission, and on 1 March 1993, the Full Commission entered an opinion and award adopting and affirming the deputy commissioner's opinion and award. From this opinion and award, plaintiff appeals.

*Mast, Morris, Schulz & Mast, P.A., by Bradley N. Schulz and T. Michael Lassiter, Jr., for plaintiff-appellant.*

*Young Moore Henderson & Alvis, P.A., by J. D. Prather, for defendant-appellees.*

ORR, Judge.

Plaintiff was employed by R. G. Barry Corporation in August, 1969 in its bedroom slipper manufacturing plant and has worked there continuously up until 1989. During the last ten years she worked for Defendant Corporation, plaintiff experienced headaches, dizziness, chronic sneezing and a rash that itched at work. In 1980 plaintiff underwent nasal surgery.

Subsequently, on 27 April 1989, plaintiff went to see Dr. Yount, a faculty member of the University of North Carolina Medical Center in the division of rheumatology and immunology, complaining of sneezing, watery eyes and nose, itching, and headaches, sometimes associated with dizziness. The symptoms appeared approximately three hours into her shift and would persist throughout the work day, although they did not occur at night or on the weekends. Plaintiff denied shortness of breath or asthma.

Dr. Yount performed allergy tests and diagnosed plaintiff as suffering from a possible work-related reaction to an unidentified substance. Thereafter, Dr. Yount corresponded with the nurse of Defendant Corporation in order to help him identify the element that was triggering plaintiff's "allergic like episodes at work." The nurse told Dr. Yount that "there was toluene in the laminating adhesive" in the plant.

On 9 May 1989, plaintiff returned to Dr. Yount with continued complaints, including mild chest tightness and shortness of breath. As found by the deputy commissioner, "[t]he possibility of allergy shots was discussed with plaintiff and she was given an excuse from work from 4 May 1989 to.5 June 1989, since she had been slow to respond to her medication." Thereafter, plaintiff returned to work until 13 June 1989 and has not worked since that date.

By letter dated 31 May 1989, Dr. Yount advised the nurse for the Defendant Corporation that "he suspected toluene as the agent that might be contributing to plaintiff's problems and that it would be advantageous to the plaintiff if she could be relocated to another job in the plant that would not expose her to toluene." The nurse informed Dr. Yount that the Defendant Corporation "did not have a job available in the plant which would not expose plaintiff to toluene." Subsequently, as found by the deputy commissioner, on 22 June 1989, "Dr. Yount recommended . . . that plaintiff find a new job that did not involve exposure to dust or chemicals." Subsequently, "[o]n 7 September 1989 Dr. Yount referred plaintiff to vocational rehabilitation because he felt plaintiff certainly appeared to have the ability to do other jobs which do not expose her to the environment which triggers her asthmatic attacks."

The deputy commissioner also found that many of the chemicals used in the Defendant Corporation's plant were irritants known to affect the respiratory tract. Further, the deputy commissioner found:

> 20. While plaintiff did not work directly with any of these chemicals, she was exposed to them by virtue of her employment to the extent that they were in the air at the plant which did not have barriers between the departments. . . . [P]laintiff's exposure to these chemicals at the plant was sufficient to generate a reaction in the plaintiff when she was at work.

Plaintiff's symptoms were diagnosed as allergic rhinitis, asthma, and chronic obstructive pulmonary disease, but the deputy commissioner found that "[n]one of these illnesses [were] caused by plaintiff's employment." The deputy commissioner also found, however:

> 22. Plaintiff's allergic upper and lower respiratory disease is related to a number of things to which she was exposed. Dust and mold contributed most to her allergic pulmonary problem. Smoking contributed to her COPD and asthma. She was allergic to some things that would probably not be in the work environ-

**GRANTHAM v. R. B. BARRY CORP.**

[115 N.C. App. 293 (1994)]

ment. However, any person who has this type of allergic problem is at a particular risk for a chemical irritation, and in plaintiff's case her problems were clearly aggravated by the chemical exposures which she experienced in her employment.

23. Plaintiff's employment with defendant-employer placed her at an increased risk of suffering from the illnesses for which Dr. Yount treated her, and aggravated her condition such that it was a significant contributing factor in her disease.

24. As a result of her disease, plaintiff was unable to earn any wages in any employment from 4 May 1989 to 5 June 1989.

Subsequently, plaintiff returned to work after 5 June 1989 and worked until 13 June 1989. On the issue of whether plaintiff was capable of working after 13 June 1989, the deputy commissioner found:

25. As a result of her disease, plaintiff is and has been since 13 June 1989 unable to earn the same or any wages in the same employment or any other employment that would expose her to chemical or other respiratory irritants.

26. The only restriction or limitation in plaintiff's ability to work or do work activity since the date she last worked, is that she must avoid respiratory irritants. From the outset her respiratory symptoms have been mild. In 1989 and 1990 she suffered from mild shortness of breath at times, mild dyspnea and wheezing at times, watery eyes and chronic sneezing. There is no evidence that her pulmonary problems or allergic rhinitis in any way limited her ability to sit, walk or stand for eight hours in a work environment which would not expose her to respiratory irritants. To the extent plaintiff or her husband testified that her symptoms were such that she was and is unable to earn wages in any employment, her testimony is not accepted as credible. Moreover, while there is evidence in the record that plaintiff's referral to vocational rehabilitation did not result in a job referral, there is absolutely no evidence on the record as to why a job referral was not made. Plaintiff has not sought any employment on her own at all, even though the medical records indicate that she had no wheezing at all in October 1990 and March 1991 and even though she testified that she has no shortness of breath when she walks, no difficulty sitting, and now has only intermittent headaches, sneezing and dizziness. There is no evidence that

plaintiff cannot read, write, make change, sit, stand, bend, walk, lift, or engage in any other activities that might be required in a job. Plaintiff has failed to show that she is unable because of her disease to earn the same or any wages in any other employment which would not involve exposure to respiratory irritants. She is only 47 years old. The fact that she worked only at defendant-employer during her entire adult life does not mean that she has no transferrable skills.

Based on these findings, the deputy commissioner concluded that "[p]laintiff suffers from an occupational disease within the meaning of G.S. § 97-53(13), inasmuch as her employment with defendant-employer placed her at an increased risk of developing her illnesses and significantly aggravated her illnesses" and that "[a]s a result of her occupational disease, plaintiff was temporarily and totally disabled from 4 May 1989 to 5 June 1989." The deputy commissioner also found, however, that plaintiff "failed to prove disability as a result of her occupational disease because she failed to prove that she was incapable after 13 June 1989 of earning the same wages she was earning in any other employment which would not expose her to respiratory irritants" and that plaintiff did not "retain any permanent disability as a result of her occupational disease." Based on these conclusions, the deputy commissioner only awarded plaintiff temporary total disability benefits for the period from 4 May 1989 through 5 June 1989, and the Full Commission affirmed the award.

## I.

[1] On appeal, plaintiff first contends that the North Carolina Industrial Commission (the "Commission") erred in refusing to award plaintiff temporary total disability benefits from 13 June 1989 until such time plaintiff is capable of gainful employment. We disagree.

"The Industrial Commission is the fact-finding body." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986).

In passing upon issues of fact, the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The Commission may accept or reject the testimony of a witness solely on the basis of whether it believes the witness or not.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-84 (1982). Subsequently, "[t]he reviewing court's inquiry is limited to two issues: whether the Commission's findings of fact are supported

GRANTHAM v. R. B. BARRY CORP.

[115 N.C. App. 293 (1994)]

by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact." *Hendrix*, 317 N.C. at 186, 345 S.E.2d at 379. "The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding." *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684.

Initially, in a claim under the Workers' Compensation Act, the claimant has the burden of proving the extent and degree of her disability; "once the disability is proven, [however,] there is a presumption that it continues until 'the employee returns to work at wages equal to those he was receiving at the time his injury occurred.'" *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 475-76, 374 S.E.2d 483, 485 (1988) (citations omitted).

In the present case, plaintiff carried her initial burden of showing that she was disabled, and the Commission found that plaintiff was disabled from 4 May 1989 to 5 June 1989. Plaintiff then returned to work performing the exact same job she had performed prior to 4 May 1989 until 13 June 1989. Further, the parties stipulated that plaintiff's average weekly wage was $250, and there is no indication in the record that this wage did not apply to the period of time plaintiff worked from 6 June 1989 until 13 June 1989. Thus, when plaintiff returned to work at the same wage that she received before the disability, the presumption that plaintiff's disability continued was ended, and the burden fell upon plaintiff to prove she was disabled after 13 June 1989. *See Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683 ("In workers' compensation cases, a claimant ordinarily has the burden of proving both the existence of [her] disability and its degree."). Thus, the first issue raised is whether plaintiff successfully carried her burden of showing that she suffered from a "Disability" after 13 June 1989 as defined under the Workers' Compensation Act.

N.C. Gen. Stat. § 97-2(9) (1991 & Supp.) defines "Disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." In *Hilliard*, our Supreme Court stated:

> We are of the opinion that in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that

GRANTHAM v. R. B. BARRY CORP.

[115 N.C. App. 293 (1994)]

this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683.

Further, as interpreted by our Supreme Court in *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 443-44, 342 S.E.2d 798, 809 (1986):

> *Hilliard* simply states that, in order to prove disability, an injured employee must prove he is unable to work and not merely that he unsuccessfully sought work. The converse is not true. In order to prove disability, the employee need not prove he unsuccessfully sought employment if the employee proves he is unable to obtain employment. An unsuccessful attempt to obtain employment is, certainly, evidence of disability. Where, however, an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist.

In the present case, the Commission found that "[a]s a result of her disease, plaintiff is and has been since 13 June 1989 unable to earn the same or any wages in the same employment or any other employment that would expose her to chemical or other respiratory irritants." No party excepts to this finding. Further, this finding is supported by competent evidence in the record. Thus, plaintiff met the first prong of the *Hilliard* test "that plaintiff was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in the same employment . . . ." *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683.

The second prong of the *Hilliard* test is that plaintiff was incapable after her injury of earning the same wages she had earned before her injury in any other employment. The plaintiff may meet her burden of proving this second prong in one of four ways:

> (1) the production of medical evidence that [she] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, . . .; (2) the production of evidence that [she] is capable of some work, but that [she] has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment . . . ; (3) the production of evidence that [she] is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education,

to seek other employment . . . ; or (4) the production of evidence that [she] has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765-66, 425 S.E.2d 454, 457 (1993) (citations omitted). Our review of the record shows that plaintiff has presented no such evidence; in fact, the only evidence plaintiff presented to show that she was incapable of earning the same wages she had earned before her injury in any other employment after 13 June 1989 was her and her husband's testimony that plaintiff was unable to do so. The Commission found, however, that "[t]o the extent plaintiff or her husband testified that her symptoms were such that she was and is unable to earn wages in any employment, her testimony is not accepted as credible." This finding is binding on appeal. *See Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683-84.

Further, at the time of the hearing, plaintiff was a forty-seven year-old woman who had obtained her graduate equivalency degree in 1984. The Commission found that "[t]he only restriction or limitation in plaintiff's ability to work or do work activity since the date she last worked, is that she must avoid respiratory irritants." The Commission also found that "[t]here is no evidence that [plaintiff's] pulmonary problems or allergic rhinitis in any way limited her ability to sit, walk or stand for eight hours in a work environment which would not expose her to respiratory irritants" and that "[t]here is no evidence that plaintiff cannot read, write, make change, sit, stand, bend, walk, lift, or engage in any other activities that might be required in a job." Our review of the record shows that these findings are supported by competent evidence. These findings are, therefore, conclusive on appeal. *See Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980).

Based on the Commission's findings and on the lack of evidence produced by plaintiff, we conclude that the Commission's finding that plaintiff "failed to show that she is unable because of her disease to earn the same or any wages in any other employment which would not involve exposure to respiratory irritants" was supported by competent evidence in the record. Accordingly, we affirm the Commission's conclusion that plaintiff failed to prove disability as a result of her occupational disease after 13 June 1989. *See Hilliard*, 305 N.C. 593, 290 S.E.2d 682.

## II.

[2]  Next, plaintiff contends that the Commission erred in the amount of fees it awarded to plaintiff for her expert witness, Dr. Carol Schiller. We disagree.

N.C. Gen. Stat. § 97-80(a) (1991 & Supp.) gives the "Commission or any member thereof, or any person deputized by it, . . . the power, for the purpose of [the Workers' Compensation Act], to tax costs against the parties . . . ." There is no restriction in either the Workers' Compensation Act or the Rules of the Industrial Commission on the Commission's discretion to tax costs of the expert fee. *See Harvey v. Raleigh Police Dep't*, 85 N.C. App. 540, 548, 355 S.E.2d 147, 152, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 86 (1987) (no restriction on discretion of the Industrial Commission to tax costs of a medical expert's deposition when plaintiff requests the deposition of its own medical expert).

In the present case, the deputy commissioner awarded plaintiff's expert witness, Dr. Schiller, $350.00. Thereafter, plaintiff filed a motion to increase the award of this fee to $3,197.60. On 15 August 1991, Deputy Commissioner Nance entered an order denying plaintiff's motion. In this order, Deputy Commissioner Nance stated:

According to Dr. Schiller's statement of professional services, the time she spent testifying at the deposition and reviewing the file in preparation for the deposition, was three hours. She charges $120.00 per hour. The $350.00 fee previously approved adequately compensates Dr. Schiller for her expert testimony by way of deposition. The other charges billed by Dr. Schiller are charges incurred by plaintiff to prosecute her claim. Defendants are not responsible for paying bills incurred by plaintiff to obtain expert toxicological support for her claim.

Subsequently, the Commission affirmed the $350.00 award. Based on our review of the record, we find no abuse of discretion. Accordingly, we affirm the award of expert witness fees.

Affirmed.

Judges WELLS and WYNN concur.