The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate order.
* * * * * * * * * *
This matter was initially heard before the Deputy Commissioner on September 29, 1995, in Charlotte, North Carolina. At the initial hearing, the parties stipulated that they are subject to the Workers' Compensation Act, that an Employer-Employee relationship existed between the parties during the time period in question, that plaintiff's average weekly wage is properly represented on a Form 22 submitted to the Industrial Commission, and that Mercy Health Services, Inc., is a duly qualified self-insured with Key Risk Management Services, Inc., as the adjusting agent for this claim. The parties further stipulated that plaintiff has received short-term disability benefits beginning in May, 1995, and that such benefits were provided pursuant to a group disability plan funded solely by Defendant.
Following the initial hearing, the parties took the deposition of Anita Gail Doster on January 17, 1996, and the deposition of Dr. Carmine Dalto on June 25, 1996. On June 27, 1996, the records of Dr. William F. Cappleman, III were forwarded to the Industrial Commission and stipulated into evidence by the parties. By Order of the deputy commissioner the record was closed on September 24, 1996, and the parties were provided a period of time to submit contentions. Thereafter, the period of time to submit contentions was enlarged, up to, and including December 13, 1996.
The issues before the deputy commissioner and now the Full Commission include the following:
1. Whether Plaintiff developed reactive airways disease syndrome (RADS), and, if so, whether the same constitutes a compensable occupational disease?
2. In the event Plaintiff has contracted a compensable occupational disease, whether Plaintiff is entitled to any compensation for disability?
3. In the event Plaintiff's claim is ruled compensable, whether Defendant is entitled to take a credit for payments made to Plaintiff under a group disability plan under N.C. G.S. § 97-42.
* * * * * * * * * *
Accordingly, based on the competent, credible, and convincing evidence of record, the undersigned make the following
FINDINGS OF FACT
1. Plaintiff has been employed with Defendant-Employer from December 29, 1980, until at least the date of initial hearing as a respiratory technician. However, she has not returned to work since May 20, 1995, when she began a leave of absence.
2. Plaintiff is a high school graduate and has completed two years of study at Central Piedmont Community College. She has worked in the textile, food service and grocery-retail industries. In addition to her medical duties as a respiratory technician, she has performed clerical work for Mercy Health Services, Inc., consisting of typing and record keeping.
3. Plaintiff's duties as a respiratory technician included administering respiratory care and patient testing, along with utilizing, maintaining and cleaning respiratory therapy equipment.
4. Cleaning respiratory therapy equipment required Plaintiff to wash the utensils in a solution of water and Joy dish washing detergent, followed by a solution of water and a cleaning agent-antiseptic, known by the brand name Wavicide, which contains the active ingredient glutaraldehyde.
5. Until 1994, the Wavicide used at Mercy Health Services was in a solution form that was diluted by 50% with water. Since 1994, Plaintiff has not cleaned respiratory therapy equipment, nor worked with Wavicide. Plaintiff has never been exposed to Cidex.
6. The MSDS Material Safety Date Sheet for Wavicide establishes that the only possible health hazard resulting from inhalation is "(v)apors from full strength solution may cause nasal discomfort." Respiratory control measures are "not generally required, but in a confined or poorly ventilated area, the use of NOSH approved respirator may be required."
7. Although Plaintiff testified that Wavicide "takes your breath like ammonia," the MSDS Material Safety Data Sheet for Wavicide lists no such hazard. Conversely, Ms. Doster has personally cleaned respiratory equipment with Wavicide, and noted that "I could sense a faint odor, but nothing that was irritating to me."
8. The facility in which Plaintiff worked was ventilated with an exhaust system. Additionally, cleaning rooms on other floors were ventilated by a negative pressure system which exhaust air outside to insure that it is not recirculated within the facility. The negative pressure system for the cleaning room located on the fifth floor was activated by a "light switch" located on a wall in the cleaning room.
9. The fifth floor cleaning room was attached to a breezeway and the doors to this cleaning room were always kept open, except during fire drills.
10. Until the position was eliminated in 1994, the duties of cleaning and maintaining equipment were relegated to a single equipment technician. Respiratory technicians, such as Plaintiff, performed equipment cleaning solely on the weekends when the equipment technician was absent. Since 1994, all respiratory therapy department staff members, consisting of eighteen to twenty persons, clean equipment as part of their regular duties.
11. Plaintiff assumed no greater responsibility for cleaning equipment than did any of her co-workers. Moreover, less than 5% of Plaintiff's work day was involved in cleaning equipment.
12. Although Plaintiff testified that on one occasion she was exposed to Wavicide, when the solution was spilled, Ms. Doster testified that Plaintiff was specifically instructed not to approach the area near the spill, and the spill was cleaned up by Plaintiff's co-worker, Patrick Gann.
13. The prior equipment technician who performed all cleaning duties on a full-time basis and used Wavicide throughout her workday developed Asthma. However, she continued to utilize Wavicide with no additional problems noted by Ms. Doster for six to eight years after receiving a diagnosis of Asthma.
14. On February 10, 1994, Plaintiff was treated for an upper respiratory infection and diagnosed by her family physician, Dr. William F. Cappleman, III, with sino-bronchitis and a chronic cough. Throughout February of 1994, Dr. Cappleman treated Plaintiff for persistent respiratory infections. Shortly thereafter, Plaintiff underwent sinus surgery. Plaintiff had a history of respiratory arrest related to her use of Valium.
15. Following Plaintiff's return to work on October 14, 1994, she was not required to clean equipment and only performed "floor work," i.e. worked with patients. When she came back to work, Plaintiff was feeling better, but became sick again three days later while walking down a hallway where a floor was being stripped with stripping solution. Plaintiff's symptoms were further aggravated when she smelled perfume worn by a co-worker.
16. In a report dated September 7, 1994, Dr. Cappleman noted that Plaintiff had informed him that "she regularly participates in cleaning respiratory equipment with Sidex (sic) which (sic) an aqueous glutaraldehyde solution. This is done in a fifth floor room and there is no special ventilation system in this room short of the usual central air." On November 29, 1994, Dr. Dalto wrote to Dr. Langley noting that previously Plaintiff had used Cydex (sic) in a fairly open area, however "due to change in environment/work place, they are now cleaning their scopes in an area that is a lot more contained." Based on the erroneous statements contained in Dr. Dalto's letter of November 29, 1994, both Dr. Langley and Dr. Dalto opined that Plaintiff had developed RADS.
17. Dr. Dalto's medical opinions were based on the assumptions that Plaintiff had utilized the cleaning agent Cidex in her work at Mercy Hospital, that the room in which Plaintiff used Cidex was an "ordinary room" with no ventilation system and that Plaintiff had not experienced an upper respirator infection in early 1994, shortly before the onset on her symptoms for which she seeks workers' compensation benefits.
18. Dr. Dalto was unaware of what level of glutaraldehyde can produce RADS. He also admitted that had he known that the rooms in which Plaintiff utilized Wavicide were equipped with a negative pressure system, he would have been less likely to believe that Plaintiff developed RADS as a result of her employment.
19. According to Dr. Dalto, RADS is a type of asthma. The doctor agreed that his diagnosis of RADS was a mere "diagnosis of exclusion" based on excluding other sources of Plaintiff's complaints. Dr. Dalto acknowledged, however, that this diagnosis did not account for a number of factors of which he was unaware, including Plaintiff's previous upper respiratory infection and sinus surgery, the concentration of glutaraldehyde contained in Wavicide and the existence of a ventilation system in equipment cleaning rooms. Since adult asthma is usually precipitated by an upper respiratory infection, the above-mentioned facts would have been significant to Dr. Dalto in forming his diagnosis and opinions regarding the cause of Plaintiff's complaints.
20. Dr. Dalto further acknowledged that Plaintiff's pulmonary function tests were normal. The doctor also testified that while repeated exposure to irritants causing reactive airways disease can result in permanent impairment of lung function, no such impairment has been found in Plaintiff's case. Dr. Dalto concluded that Plaintiff is capable of working in an environment that contains no more air-born irritants than are found in her home.
21. At no point did Dr. Dalto convincingly or credibly indicate whether Plaintiff's employment as a respiratory therapist at Mercy Hospital placed her at an increased risk of developing RADS of any other respiratory disease as opposed to members of the general public. Such evidence is lacking completely from the record.
22. Plaintiff has been out of work since May 20, 1995. For twenty-two weeks during Plaintiff's current leave of absence, she received benefits equaling 50% of her basic weekly earnings pursuant to a private short-term disability plain maintained by Mercy Health Services for Plaintiff's benefit. The benefits paid to Plaintiff pursuant to this group plain total $4,534.20. Plaintiff was not required to, and did not, contribute in paying the premiums for this private disability insurance.
23. Plaintiff's development of RADS and other respiratory conditions is not the result of a compensable injury or occupational disease. There is insufficient credible or convincing medical evidence to establish a causal connection between Plaintiff's development of her respiratory condition and her employment as a result of a compensable injury or occupational disease.
* * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. Pursuant to N.C.G.S. § 97-53(13), an occupational disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." Therefore, in order to meet her burden, Plaintiff must establish that the alleged disease is (1) characteristic of persons engaged in a particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be causal connection between the disease and the employee's employment,Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 s.e.2d 359, 365 (1983). In this case, Plaintiff failed to sufficiently, convincingly, or credibly establish the above requirements.
2. As established in Hilliard v. Apex Cabinet Co.,305 N.C. 593, 596, 290 S.E.2d 682, 684 (1982), evidence that Plaintiff may be unsuited for particular employment "due to characteristic peculiar to (her)," does not prove that her condition is characteristic of and caused by her employment. Rather, the evidence presented convincingly establishes that Plaintiff is uniquely sensitive to chemicals found in both her home and at Mercy Health Services. Accordingly, her condition would have developed regardless of her work activities, and her development of RADS or other respiratory conditions does not qualify as a compensable an occupational disease.
3. Since the doctors' opinions were based on erroneous assumptions and histories given that Plaintiff had utilized the cleaning agent Cidex in her work at Mercy Hospital, that the room in which Plaintiff used Cidex was an "ordinary room" with no ventilation system, and that Plaintiff had not experienced an upper respiratory infection in early 1994 shortly before the onset of the symptoms for which she seeks workers' compensation benefits, little weight is given to that testimony; and it is not accepted as credible or convincing in the case at hand. Therefore, Plaintiff did not sufficiently carry her Burden of Proof in this case.
4. It is apparent that Plaintiff has personal sensitivity to her environment, both in and out of work. Therefore, her condition does not constitute a compensable occupational disease.Sebastian v. Hair Styling, 40 N.C. App. 30,251 S.E.2d 872, disc. rev. denied, 297 N.C. 301, 254 S.E.2d 921 (1979).
5. Although Plaintiff may suffer from asthma, she is not disabled nor has she experienced any period of disability as a result of a compensable occupational disease. Grantham v. R. G.Barry Corp., 115 N.C. App. 293, 444 S.E.2d 659 (1994). The doctors indicated that Plaintiff is capable of working in an environment that contains no more airborne irritants than are found in her home.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
ORDER
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
It is further ordered that this case be REMOVED from the Full Commission hearing docket.
This the ____________ day of ________________, 1997.
 S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________ COY M. VANCE COMMISSIONER
S/ ____________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
JHB/kws