Although plaintiff received an admittedly compensable injury to his back on September 25, 1995, (Tr. at. 3), he missed no work during the immediate aftermath and never asked for a work excuse. Williams Depo. at 8. He was eventually kept out of work for a short period pending the results of an MRI, which came back normal. Ex. at 10, 12; Nelson Depo. at 10. Plaintiff was released to work with no restrictions on January 17, 1996, with no permanent work-related disability. T Ex. at 12, 13, Nelson Depo. at 12, 16. Plaintiff testified that he returned to work for defendant doing the same or similar work as before his injury. Tr. at 8, 10-11. With the exception of a vacation to the Daytona 500 Race in Florida, in February 1996 (Tr. at 24, 29), plaintiff worked for defendant without incident until March 8, 1996. Tr. at 12.
On March 8, 1996, plaintiff alleges he over-exerted himself at work to the extent that he was unable to get out of bed the next day. Tr. at 12-13. He testified that he called his supervisor, Ronnie Narron, on Monday, March 11, informing him, that he was in excruciating pain and could not get out of bed. Tr. at 13-14. Mr. Narron denied this call, stating that plaintiff never requested a leave of absence. Tr. at 74, 76, 80. On March 11, 1996, when plaintiff alleges pain that kept him bed-bound, Dr. William's records reflect that plaintiff was seen in her office on that day and that his condition was "some better" with "good range of motion on adjustment." Williams Depo. at 20, 59. There is no evidence that plaintiff sought any other medical treatment until July 19, 1996, when he consulted Dr. Thomas A. Dimmig of Triangle Orthopedic. Tr. at 16. Three months had passed since his last treatment with Dr. Williams and four months had elapsed since plaintiff had left his employment with defendant. Plaintiff never made any other attempts to contact his supervisors about missing work and testified that he thought that he had been either fired or laid off by his employer. Tr. at 15.
When an injured worker returns to work at the same wages that he or she earned before the injury, the presumption of the claimant's continuing disability ends and the claimant has the burden of proving a new period of disability. Ashley v.Rent-A-Car Co., 271 N.C. 76, 155 S.E.2d 755 (1967); Grantham v. R.G. BaLry Corp., 115 N.C. App. 293, 444 S.E.2d 659 (1994). Consequently, plaintiff has the burden to either rebut the presumption of no continuing disability or the burden of proving a new period of disability (or change of condition due to his prior disability) commencing March 8, 1996.
The medical evidence is undisputed that plaintiff was not authorized by any medical care provider to remain out of work for any period of time subsequent to January 17, 1996. No medical care provider placed any restrictions on plaintiff's work activities after January 17, 1996. Dr. Nelson testified that he found nothing on plaintiff's physical examination or in his medical history that would prevent plaintiff from returning to his regular occupation. Nelson Depo. at 17-18. Dr. Dimmig testified that he made no specific work activities recommendations for plaintiff. Dimmig Depo. at 27. Similarly, Dr. Williams never restricted plaintiff's ability to work. Williams Depo. at 50. Plaintiff can cite no support from the medical evidence that he was physically incapable of performing his regular job with defendant.
Despite significant testimony about pain, plaintiff has participated in activities that are inconsistent with any disability. In fact, plaintiff started his own welding business and performs work at $30-35 per hour. Tr. at. 32-33. Furthermore, plaintiff's February 1996 vacation to attend the Daytona 500 Race in Florida most likely involved a great deal of sitting and standing. Plaintiff worked for defendant for almost 50 days without any problems after being released by Dr. Nelson with no restrictions. Finally, even though plaintiff received chiropractic treatment from the date he returned to work until he left his employment with defendant, Dr. Williams' notes indicated that he was "some better" on nearly every visit. Furthermore, Dr. Williams testified that she provided treatment for headaches and neck pain unrelated to plaintiff's work-related injury. Williams Depo. at 27.
Under the Workers' Compensation Act, disability is defined as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Since plaintiff's disability was clearly not continuing from his September 1995 injury, he must show that he entered a new period of disability on March 8, 1996. The Supreme Court, in Hilliard v. Apex CabinetCo., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982), set forth a three-pronged test to support a conclusion of disability. Plaintiff must show that: (1) he was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) he was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that his incapacity to earn was caused by his work-related injury. Plaintiff fails to meet this test. First, he left his job with defendant on March 8, 1996, with no medical excuse, while earning the same wages as his pre-injury wages. His job remained available until he was finally terminated for violation of defendant's absentee policy. Next, the evidence is unequivocal that plaintiff always remained capable of earning considerable income through his own welding business. Finally, plaintiff has not demonstrated any incapacity to earn. His business card, introduced into evidence at the hearing, referenced heavy equipment, among other things. Plaintiff testified about the contracts that he has obtained after his job ended with defendant. Plaintiff has unequivocally demonstrated an ability to work with no restrictions from any physician, no permanent disability, and no diminution in wages.
In light of the above, the undersigned dissents from the majority's decision in this matter and would vote to reverse the Deputy Commissioner's Opinion and Award.
This ___ day of July 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER