Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the hearing the parties entered into a Pretrial Agreement and stipulated into evidence certain medical records and reports. The stipulations set forth within the Pretrial Agreement are hereby made a part of the findings in this case.
2. At the time of the alleged injuries, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. At the time of the alleged injuries, the employer-employee relationship existed between defendant-employer and plaintiff.
4. At the time of the alleged injuries, American Protection Insurance Company was the carrier on the risk.
5. On 14 November 1997, plaintiff strained his neck as the result of a specific traumatic incident. On 17 August 1998, plaintiff suffered an injury to his groin by accident. On 3 April 1998, plaintiff contends he suffered an injury by accident to his left knee which was denied by defendants.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 40-year-old male. He began working for defendant-employer on 19 August 1997 as a long-distance truck driver. Plaintiffs job duties required him to deliver beer and wine to various locations where he would unload those items from his truck using a hand truck and place the product on the customers shelves. At the time of plaintiffs first injury, he had been employed for three months. Prior to working for defendant-employer, plaintiff was unemployed from 1996 through August 1997.
2. On 14 November 1997, plaintiff was attempting to carry a keg of beer when he fell, injuring his neck and upper back. Plaintiff underwent conservative treatment with Dr. David Trott who diagnosed upper back pain. All testing performed on plaintiffs back was normal and plaintiff was released to return to work with a 15 pound lifting restriction which was effective through 15 December 1997. Plaintiff continued to work with restrictions through January 1998 when he was seen by Neurosurgeon, Richard Weiss. Dr. Weiss examination was normal and the diagnosis was soft tissue injury. No further medical treatment was recommended.
3. Plaintiff continued working as a driver for defendant-employer. On 3 April 1998, plaintiff was delivering defendant-employers product to a Food Lion grocery store when he stepped up on his truck and his knee popped. Several days later he woke up and the whole inside of his knee was swollen and red. Plaintiff went to Park Ridge Hospital where he underwent an x-ray which was normal. Plaintiff was diagnosed as having a knee strain. He did not obtain further medical care for his knee and was not written out of work or assigned a disability rating as a result of this injury. Plaintiff testified at the hearing that nothing unusual happened to cause the knee injury. Plaintiff had to step up on his truck in the same way numerous times during the day.
4. Plaintiff continued working without incident until 17 August 1998, when he stepped on a crate which moved under him and caused him to fall into a split position resulting in an injury to his groin. Plaintiff was able to continue working through the following day when he reported his injury to his supervisor and was sent to see Dr. Trott. Following his examination on 19 August 1998, Dr. Trott noted that plaintiff did not have any swelling or bulging in his testicle or groin area. He advised plaintiff to take an over-the-counter pain medication and released him to return to work with a 20 pound lifting restriction, effective through 26 August 1998. When plaintiff next presented to Dr. Trott on 31 August 1998, he was fully recovered. Dr. Trott noted that no additional medical treatment was needed and plaintiff could begin working without restrictions beginning 1 September 1998.
5. Plaintiff continued working through 16 October 1998, when he requested medical leave. Plaintiff contends that he sought leave based upon continuing complaints of pain resulting from numerous injuries sustained on his job. Defendant-employers representatives, Becky Pope and Greg Ensley, believed that plaintiff was out of work for a problem involving his prostate. Plaintiffs family physician, Dr. Rebecca Clemenzi, completed an accident and health form stating that plaintiff was disabled beginning on 9 October 1998, as the result of an illness involving his prostate. This form was signed by both Dr. Clemenzi and plaintiff. Dr. Clemenzis records reflect that she had been treating plaintiff for a seizure disorder, anxiety, bilateral wrist pain, and bilateral hip pain. Plaintiff was complaining of multiple joint aches and was being evaluated for arthritis and other connective tissue disorders.
6. Plaintiff returned to work for defendant-employer on 26 October 1998. Defendant-employer requested a return to work note with regard to the prostate illness. Thereafter, plaintiff returned with a note from Dr. Clemenzi stating that plaintiff needed additional days off as the result of hip pain. Plaintiff returned to work at his regular job position on 3 November 1998.
7. When plaintiff returned to work on 3 November 1998, his employment with defendant-employer was terminated. Plaintiff testified that he did not quit his job, but instead, requested further time off due to pain in his groin, low back and legs. Becky Pope, the Office Manager for defendant-employer was told by plaintiff on 2 November 1998, that he was unhappy with his work and was thinking about quitting. Plaintiff told Ms. Pope that he thought he was underpaid. Plaintiff did not tell Ms. Pope that he was physically incapable of performing his job. On 3 November 1998, plaintiff spoke to Greg Ensley, the Operations Manager for defendant-employer. Plaintiff told Mr. Ensley he was not being paid enough money and did not like changes that had been made to his route. Plaintiff told Mr. Ensley that he was simply not happy in his job. It was then agreed that plaintiff was going to terminate his employment. Plaintiff did not state that he was physically unable to perform his job duties. On 3 November 1998, an employee separation form was completed indicating that plaintiff had terminated his job based on his belief that he was underpaid for a driver. Dr. Clemenzi, plaintiffs family doctor, testified that plaintiff told her he had quit his job.
8. On 11 November 1998, plaintiff began working for a new employer. Plaintiff worked for Canteen America from 11 November 1998, through 4 December 1998. This job was similar to plaintiffs job at defendant-employer in that it involved delivering food and drinks to various locations. Plaintiff eventually quit his job, contending that he could not do the work due to low back and leg pain.
9. In November 1998, plaintiff returned to see Dr. Trott. Plaintiff told Dr. Trott that he did not think he could work due to pain in his feet, prostate, hips, back and neck. In addition, plaintiff discussed several personal health problems including bursitis and a prostate infection. Dr. Trott transferred plaintiffs care to Dr. Weiss. Dr. Weiss evaluated plaintiff on 22 February 1999. The neurological exam was normal and Dr. Weiss could not establish an etiology for all of plaintiffs claimed discomfort. Dr. Weiss released plaintiff from his care.
10. On 17 March 1999, plaintiff was seen by Dr. Mark Moody. Dr. Moodys examination of plaintiff was normal other than plaintiffs subjective complaints of pain. At the time of the hearing before the Deputy Commissioner, plaintiff had not sought further medical care. In addition, plaintiff had not made any attempt to return to work after quitting his job with Canteen America.
11. In December 1998, plaintiff underwent a Functional Capacity Evaluation performed by Duncan Sharrits. In performing the Functional Capacity Evaluation, the physical therapist relied on the truthfulness of the history given to him by plaintiff regarding plaintiffs pain, how he was injured, his medical care and his job duties. Mr. Sharrits did not contact the employer for additional information and did not review a complete set of plaintiffs medical records. In particular, Mr. Sharrits was not aware that Dr. Weiss had affirmatively ruled out any type of nerve or disc injury. The limits on plaintiffs Functional Capacity Evaluation were established based on plaintiffs complaints of either being in pain or being unable to do any more. To the extent the Functional Capacity Evaluation is based on plaintiffs "psycho-physical limitations, the results are only valid if plaintiff is being honest about his abilities and is giving his best effort. Due to the subjectivity involved in this evaluation, the numerous normal medical examinations and tests performed on plaintiff, and the physical therapists limited knowledge of plaintiffs prior medical history, the Functional Capacity Evaluation is given little weight.
12. Dr. Clemenzi never independently determined that plaintiff was unable to work for any period of time, and instead, wrote plaintiff out of work when he asked her to do so. Dr. Moody did not authorize plaintiff to remain out of work. According to Dr. Weiss, there was no physical reason why plaintiff could not return to his prior job.
13. Dr. Clemenzi did not offer an opinion on the cause of plaintiffs neck and back pain. Dr. Clemenzi noted that she never examined plaintiffs neck or back and simply relied on his history that his ongoing pain was related to an injury at work. Dr. Moody had no objective evidence of any type of injury and his examination of plaintiff was essentially normal. Dr. Moody had no independent opinion as to whether plaintiffs chronic pain was related to the 14 November 1997 work injury. Dr. Moody noted that some of plaintiffs complaints were not related to any type of spine injury and that he could not find any objective evidence to relate plaintiffs pain back to the 14 November 1997 injury by accident.
14. Plaintiffs examination by Dr. Weiss and tests were normal. Although plaintiffs cervical MRI was positive for osteophytes, these findings were degenerative and did not correlate with plaintiffs pain complaints. Dr. Weiss felt that it would be unusual for someone to continue to have pain over a year and a half after a strain-type injury, and that it would be very hard to relate to plaintiffs complaints in early 1999 to the original injury of 1997.
15. Plaintiffs injuries of 14 November 1997 and 17 August 1998 constitute injuries by accident under the Act. The injury sustained on 3 April 1998 does not constitute an injury by accident as defined under the Act.
16. The injuries sustained by plaintiff on 14 November 1997, and 17 August 1998, were soft tissue injuries or strains which have resolved. No further medical treatment is needed as a result of these strain injuries. Plaintiff has not suffered any disability related to these injuries. Defendant-employer provided suitable employment during all periods of time wherein plaintiff was released to work with restrictions.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not prove that the knee problem for which he was treated in April 1998, was a proximate result of an accident arising out of and in the course of his employment with defendant-employer, and is therefore, not entitled to benefits under the Workers Compensation Act for his knee condition. N.C. Gen. Stat. 97-2(6).
2. Plaintiff has proven by competent evidence that the injuries sustained on 14 November 1997, and 17 August 1998, constituted injuries by accident which arose out of and in the course of his employment with defendant-employer. Therefore, plaintiff is eligible for compensation for all medical treatment related to these injuries, subject to the limitations contained in N.C. Gen. Stat. 97-25.1. N.C. Gen. Stat. 97-2; N.C. Gen. Stat. 97-25.
3. Plaintiff did not prove by competent, credible evidence that he is entitled to any indemnity benefits as the result of the injuries of 14 November 1997, or 17 August 1998. The competent evidence supports a finding that the injuries sustained on 14 November 1997, and 17 August 1998, were soft tissue injuries or strains which have resolved. No further medical treatment is needed as a result of these strain injuries. Further, plaintiff has failed to establish any disability related to these injuries. Defendant-employer provided suitable employment during all periods of time wherein plaintiff was released to work with restrictions. Plaintiff has made no effort to obtain employment after leaving his positions with defendant-employer and Canteen America. All of plaintiffs physicians agree that plaintiff is capable of working. Plaintiff did not prove that he was incapable after injury of earning the same or greater wages as he had earned before the injury as the consequence of the work-related injury. Grantham v.R.G. Barry Corp., 115 N.C. App. 293, 444 S.E.2d 659
(1994).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay for any outstanding medical expenses incurred by plaintiff which are reasonably related to the compensable injuries of 14 November 1997, or 17 August 1998, subject to the limitations of N.C. Gen. Stat. 97-25.1.
2. Plaintiffs claim for further workers compensation indemnity benefits is hereby DENIED.
2. Defendants shall pay the costs.
This the day of November, 2000.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/________________________ RENE C. RIGGSBEE COMMISSIONER