* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties prior to the hearing before the Deputy Commissioner in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Anita B. Wall is the Plaintiff-Employee.
2. N.C. Department of Juvenile Justice and Delinquency Prevention is the Defendant-Employer. N.C. Department of Juvenile Justice and Delinquency Prevention is self-insured. Key Risk Management Services, Inc. is the Third-Party Administrator.
3. The parties are subject to the N.C. Workers' Compensation Act.
4. Defendant employs three or more persons.
5. Plaintiff's average weekly wage is $764.80, which produces a compensation rate of $509.89.
6. Plaintiff sustained an injury on June 13, 2002.
7. The injury arose out of and in the course of employment and has been accepted as compensable by defendant.
8. The Proposed Issues for Determination are:
 (A) Whether plaintiff is entitled to total temporary disability benefits, or other disability benefits, for any periods from January 27, 2003, through October 28, 2004, and if so, what benefits.
 (B) To what benefits plaintiff is entitled between September 30, 2002, when she was released from employment, and her surgery on December 30, 2002.
 (C) Whether defendant is entitled to a credit for unemployment benefits received by plaintiff.
9. The following stipulated exhibits were received at the hearing before the Deputy Commissioner:
• Exhibit 1: Medical Records and NCIC Forms
• Exhibit 2: Personnel Records
• Exhibit 3: Praxis Records
• Exhibit 4: Employment Security Commission records
 * * * * * * * * * * *
Based on the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, Anita B. Wall, was born on June 29, 1946, and was 58 years old at the time of the hearing before the Deputy Commissioner. Plaintiff has a Bachelor's degree in Visual Communication with a minor in Psychology and a Master of Arts degree in Media Technology. She is a few hours short of a degree in Education. Prior to her employment with the N.C. Department of Juvenile Justice and Delinquency Prevention, plaintiff was employed in numerous clerical, data entry, and administrative positions.
2. Plaintiff obtained a temporary license to teach Art from the State Board of Education/Department of Public Instruction for a two-year period running from July 1, 2000, through June 30, 2002. To continue with employment as an Art teacher after June 30, 2002, plaintiff was required to earn six semester hours of course work before the beginning of the 2001-2002 school year and an additional six semester hours of course work before the beginning of the 2002-2003 school year, and pass the Praxis examinations.
3. In October 2000, plaintiff entered into a probationary teacher employment contract with defendant. This contract required plaintiff to comply with the requirements of the Department of Public Instruction teaching license, including the additional course work and successful completion of the Praxis examinations. Plaintiff was employed as an Art teacher at C.A. Dillon School, which is operated by the N.C. Department of Juvenile Justice and Delinquency Prevention. The first contract with defendant covered a period ending June 30, 2001.
4. Plaintiff successfully performed her duties as an Art teacher at the C.A. Dillon School. In May 2001, plaintiff entered into a second contract for probationary employment with defendant for the period from July 1, 2001, through June 30, 2002. Plaintiff's contract for employment continued to require that she have a license from the North Carolina Department of Public Instruction and that she complete the course work and pass the Praxis examinations as requested by the Department of Public Instruction.
5. Plaintiff took the required course work and was successful as an Art teacher at the C.A. Dillon School. However, despite taking the examinations on several occasions, plaintiff did not pass the required Praxis examinations.
6. On June 4, 2002, plaintiff was reminded by defendant that her current teaching license issued by the N.C. Department of Public Instruction would expire on June 30, 2002, unless she completed the required courses and successfully passed the Praxis examinations. Plaintiff was further advised that if she failed to obtain her teaching license by September 30, 2002, she would be dismissed as an employee with defendant.
7. On June 13, 2002, at approximately 8:00 A.M., plaintiff fell on uneven pavement of the sidewalk while walking to her classroom and injured her left knee and elbow. Plaintiff immediately reported her injury and was sent for medical treatment by the Employer.
8. Plaintiff was initially treated for her July 13, 2002 injury at John Umstead Hospital and was referred to Concentra Medical Center. Plaintiff was treated conservatively at Concentra Medical Center with medications, physical therapy, and with restrictions to sit most of the time, no squatting, no kneeling, and no climbing stairs or ladders. These restrictions were within plaintiff's normal working duties.
9. After her compensable June 13, 2002, injury, plaintiff continued to work for defendant at C.A. Dillon School as an Art teacher. Nelda Carroll and Ann Carver from the C.A. Dillon School were both of the opinion that plaintiff was an excellent employee who did not miss time from work except for medical appointments. Both before and after her injury, plaintiff was capable of and did perform her duties as an Art teacher to the satisfaction of defendant. Her position as a teacher allowed her to sit and stand as needed and was sedentary in nature. Plaintiff's injury did not prevent her from performing her usual job duties as an Art teacher. Plaintiff would have continued to work as a teacher after her injury if she had had her teaching license.
10. On June 30, 2002, plaintiff's temporary teaching license expired. Plaintiff was unable to obtain a permanent teaching license due to her failure to pass the Praxis examination. Because the teaching license is a requirement to be a full-time teacher in a public school in North Carolina, defendant had no discretion in the matter of whether to continue to employ plaintiff as a full-time teacher.
11. On August 28, 2002, plaintiff was given notice that the Department of Juvenile Justice Board of Education was going to recommend her dismissal as a teacher because she failed to maintain her teaching license. Plaintiff was given a 14-day period to request a hearing to dispute her dismissal. Plaintiff did not dispute the proposed termination of her employment. On September 25, 2002, George L. Sweat, Secretary of the N.C. Department of Juvenile Justice and Delinquency Prevention accepted the Superintendent's recommendation to dismiss plaintiff from employment. Plaintiff's employment with defendant ended on September 30, 2002. Plaintiff's termination of employment was not due to her injury. Plaintiff's termination was due to failure to successfully complete the requirements to obtain a permanent teaching license from the N.C. Department of Public Instruction. Plaintiff would have been able to continue in her employment with defendant if she had obtained the required teaching license.
12. Plaintiff could have and would have continued in her employment with defendant at C.A. Dillon School except for her failure to pass the Praxis examinations required for her license from the N.C. Department of Public Instruction.
13. Ann Carter, the Principal at C.A. Dillon, indicated that plaintiff was eligible, without the teacher's certification, for part-time work as a substitute teacher; however, plaintiff did not request this work from defendant, and defendant did not expressly offer this work to plaintiff at any time after plaintiff's full-time employment with defendant ended on September 30, 2002.
14. Plaintiff took the Praxis examination again in January 2003, but did not pass the examination. Plaintiff has not sought to take the Praxis examination again. Plaintiff would be eligible for employment with defendant should she obtain her teaching license.
15. On August 27, 2002, plaintiff saw Dr. Bush, an orthopaedic surgeon with Concentra Medical Center, who recommended an MRI of plaintiff's left knee. After reviewing the MRI, Dr. Bush recommended arthroscopic surgery to repair a tear in plaintiff's meniscus.
16. On November 25, 2002, plaintiff saw Dr. Szura, an orthopaedic surgeon. Dr. Szura agreed that plaintiff was a surgical candidate and performed surgery on plaintiff's left knee for a medial meniscus tear on December 30, 2002. Dr. Szura took plaintiff out of work from December 30, 2002, the date of her surgery, through January 29, 2003, when plaintiff was released to return to work with restrictions of flexible sitting and standing, no climbing on ladders, no kneeling, and no stooping. On April 15, 2003, plaintiff reported to Dr. Szura that she could perform her regular duties as a teacher. Plaintiff continued to advise Dr. Szura that she felt that she could perform her regular duties as a teacher at her last visit with him on July 22, 2003. Dr. Szura had no prohibition against plaintiff looking for work during the periods from when he first saw her in November 2002 until the surgery on December 30, 2002, and also had no prohibition against plaintiff looking for work during the period from January 29, 2003, through her last treatment on July 22, 2003. Based on plaintiff's lack of complaints at her appointment on July 22, 2003, Dr. Szura found that plaintiff had reached maximum medical improvement with a 10% impairment rating. On July 22, 2003, Dr. Szura advised plaintiff to return to see him on an as needed basis.
17. Plaintiff sought no medical treatment from July 22, 2003, until July 16, 2004, when she saw Dr. Vaughn, an orthopaedic surgeon who specializes in hip and knee reconstruction. Dr. Vaughn diagnosed plaintiff with severe tricompartmental degenerative disc disease or osteoarthritis of the left knee. Dr. Vaughn reviewed Dr. Szura's notes and felt that plaintiff had the same work abilities when he saw her in July 2004 as previously expressed by Dr. Szura in July 2003. This included performing sedentary type work with no running, jumping, or impact activities to her knee. Dr. Vaughn did not write plaintiff out of work prior to her surgery in the fall of 2004.
18. Plaintiff had total knee replacement surgery by Dr. Vaughn on October 29, 2004.
19. After her dismissal from employment with defendant on September 30, 2002, plaintiff filed for and received unemployment benefits. Plaintiff looked for two jobs per week while receiving unemployment benefits and she filed reports on November 26, 2002; January 15, 2003; April 30, 2003; June 18, 2003; August 6, 2003; September 24, 2003; November 14, 2003; and December 31, 2003, indicating that she had sought employment. Plaintiff actively searched for employment that she felt that she could perform, including positions with other schools.
20. Plaintiff was physically and mentally capable of performing the jobs that she applied for, and she applied for positions that were available. Plaintiff applied for jobs in teaching and counseling fields; however, she does not have licenses in these fields. Although plaintiff's testimony establishes that she actively searched for available employment that she feels she was qualified to perform, and that she was not hired, she does not know the reason why she was not hired. No competent evidence was provided that any employer did not hire plaintiff because she was not able to work due to her June 13, 2002, injury.
21. Although plaintiff speculated that she might not have been hired because of her injury, there is no medical evidence that she could not perform the work that she was performing for defendant or the other available jobs that she was seeking. The evidence is that plaintiff was medically able to work and that positions within her abilities were available during the relevant time periods of October 1, 2002, to December 29, 2002, and January 29, 2003, through October 28, 2004.
22. Plaintiff has failed to establish that she was disabled because of her compensable injury from her last date of employment on September 30, 2002, until she was taken off from work on December 30, 2002, for her first surgery. Plaintiff has failed to establish that she was disabled because of her compensable injury from January 29, 2003, until her second surgery on October 29, 2004. The evidence was that plaintiff could perform sedentary work with the ability to change sitting and standing positions and without climbing on ladders, kneeling, and stooping. Plaintiff was satisfactorily performing her employment with defendant before they were required to separate her employment for lack of the required teacher's license. Plaintiff's lack of employment was due to her failure to obtain a permanent teaching license, not because of her injury.
 * * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on June 13, 2002, in the course of her employment. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has the burden of proving that she is disabled and the extent of her alleged disability. Johnson v. Southern TireCo., 358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004). "Disability" is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Johnson at 707, 599 S.E.2d at 513; N.C. Gen. Stat. §§ 97-2(9), 97-29. To establish disability, plaintiff must establish facts indicating: "(1) [plaintiff] was incapable of earning pre-injury wages in the same employment, (2) she was incapable of earning pre-injury wages in any other employment, and (3) the incapacity to earn pre-injury wages in either the same or other employment was caused by [the] plaintiff's injury." Parker v. Wal-Mart Stores, Inc.,156 N.C. App. 209, 211-12, 576 S.E.2d 112, 113-14 (2003); see also,Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682,683 (1982). Plaintiff may prove such incapacity by "the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment." Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993); see also, Knight v. Wal-Mart Stores, Inc.,149 N.C. App. 1, 7, 562 S.E.2d 434, 439, aff'd per curiam, 357 N.C. 44,577 S.E.2d 620 (2003).
3. Plaintiff has established that she was disabled from work for the period from December 30, 2002, through January 29, 2003, while off from work at the direction of Dr. Szura for her first surgery. N.C. Gen. Stat. §§ 97-2(9), 97-29.
4. Plaintiff has not established that she was disabled from work because of her injury for the periods from October 1, 2002, through December 29, 2002, and January 29, 2003, through October 28, 2004. N.C.G.S. §§ 97-2(9), 97-29, 97-30. No doctor took plaintiff off from work during these periods. See Springer v.McNutt Service Group, 160 N.C. App. 574, 586 S.E.2d 554 (2003) (affirming Commission that plaintiff did not establish disability when no physician prevented plaintiff from working). Plaintiff was able to satisfactorily perform her employment before she was separated for failure to have the required teaching license on September 30, 2002. Plaintiff's loss of income was due to her failure to have the required teaching license, not because of her compensable injury. In order to prove disability, the injured employee must establish she is unable to work and not merely that she unsuccessfully sought work. See Peoples v. Cone MillsCorp., 316 N.C. 426, 443-44, 342 S.E.2d 798, 809 (1986);Grantham v. G.R. Barry Corp., 115 N.C. App. 293, 300,444 S.E.2d 659, 663 (1994). The relevant inquiry is not whether plaintiff actually obtained a job or whether a job was actually offered. See Johnson, supra, 358 N.C. at 705, 599 S.E.2d at 511
(issue is whether jobs are available, not whether job is actually offered); Peoples at 443-44, 342 S.E.2d at 809 (employee must prove he is unable to work and not merely that he unsuccessfully sought work). The issue is "whether suitable jobs are available and whether plaintiff is capable of getting one." Johnson at 705, 599 S.E.2d at 511. A "suitable job" is "one that is available to the employee and that the employee is capable of performing considering, among other things, [her] physical limitations." Id. at 708, 599 S.E.2d at 514. Plaintiff's ability to perform her work before she was separated for lack of a teaching license, her statements to Dr. Szura that she could perform her regular duties as a teacher following her surgery, and her testimony that she applied for at least two jobs per week that she felt she could perform and were available, establish that plaintiff was not disabled as a consequence of her injury for the relevant periods of October 1, 2002, through December 29, 2002, and January 30, 2003, through October 29, 2004. SeePomeroy v. Tanner Masonry, 151 N.C. App. 171, 181,565 S.E.2d 209, 216 (2002) (evidence that prior to drawing unemployment benefits plaintiff was physically able to work and actually working was competent evidence that lack of employment was not casually related to accident).
5. Defendant would be entitled to a credit for unemployment benefits paid to plaintiff during periods of disability pursuant to N.C. Gen. Stat. § 97-42.1; however, there is no evidence that plaintiff was disabled during the relevant periods of October 1, 2002, through December 29, 2002, and January 30, 2003, through October 29, 2004, when unemployment benefits were paid.
 * * * * * * * * * * * The foregoing stipulations, findings of fact and conclusions of law engender the following: ORDER
1. Plaintiff's claim for indemnity benefits for the periods between October 1, 2002, through December 29, 2002, and January 29, 2003, through October 28, 2004, are DENIED.
2. All costs shall be paid by the party that incurred same.
This 22nd day of May, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER